IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BYRON BROWN,<br><br>        Plaintiff,<br>    v.<br><br>LANDMARK EVENT STAFFING SERVICES, INC., a Delaware corporation; VULCAN LLC, a Washington limited liability company; VULCAN SPORTS & ENTERTAINMENT LLC, a Washington limited liability company,<br><br>        Defendants. | Case No.: 3:23-cv-01408-AN<br><br>OPINION AND ORDER |

Plaintiff Byron Brown initially brought this discrimination action against defendants Vulcan LLC and Vulcan Sports & Entertainment LLC (collectively, "Vulcan"); Landmark Event Staffing Services, Inc. ("Landmark"); and a John Doe defendant who has since been identified as Charles Colbert. Against all defendants, plaintiff alleged claims for (1) discrimination under the Oregon Public Accommodations Act ("OPAA"), Oregon Revised Statutes ("ORS") § 659A.403; and (2) negligence. Vulcan and Colbert have since been dismissed from the action, and Landmark now seeks summary judgment on both claims. After reviewing the parties' filings, the Court finds that oral argument will not help resolve this matter. *See* Local R. 7-1(d). For the reasons stated below, Landmark's motion for summary judgment is DENIED.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). Material facts are those which "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence

1

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When a moving party demonstrates the absence of a genuine dispute as to any material fact, the nonmoving party that bears the burden at trial must show in response that there is evidence creating a genuine dispute as to any material fact. *Rivera*, 395 F.3d at 1146 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## BACKGROUND

A.  **Factual Background**

Landmark is a "corporation engaged in security for the Moda Center." Compl., ECF 2-1, at ¶ 1.[1] Plaintiff is an African American man who has sold tickets outside the Moda Center for approximately fifty years. Decl. of Cliff J. Wilson Supp. Landmark Mot. for Summ. J. ("Wilson Decl."), ECF 48, Ex. A at 2-3, 7; Decl. of Byron Brown Supp. Pl. Resp. ("Brown Decl."), ECF 49-2, ¶¶ 2.[2] Plaintiff makes a profit on the majority of the days he works. Wilson Decl. Ex. A at 9-10. Though plaintiff resells tickets, he does not consider himself a "ticket scalper" because he does not sell the tickets for greater than their printed face value. *Id.* at 7-8. Due to modern ticket selling processes, the tickets do not have any value printed on them at the time of their resale. *Id.*

On February 19, 2023, plaintiff set up, as he often does, in an area outside of the Moda Center that he understood to be designated for ticket reselling. Wilson Decl. Ex. A at 17-18. He believed this to be a designated area for several reasons. First, in the fifty years plaintiff has been reselling tickets, he had sold tickets there many times and had never before been told that he could not sell in that location. Decl. of Adam Kiel Supp. Pl. Resp. ("Kiel Decl."), ECF 49-1, at 8. Second, he had previously been told by Moda

---

[1] Although this is an allegation made in plaintiff's complaint, no party has filed any evidence to the contrary and Landmark has not disputed this claim.
[2] All citations refer to ECF pagination.

Center security that this location was designated for ticket reselling. *Id.* at 10-11. Third, he had also seen people be directed to this area for ticket selling many times in the past. Wilson Decl. Ex. A at 19. Kyle Eason, a Caucasian man who has worked as a ticket reseller for nearly eighteen years, additionally testified at deposition that sellers have been allowed to resell tickets in this designated area outside the Moda Center for years. Decl. of Kyle Eason Supp. Pl. Resp., ECF 49-3, ¶¶ 1-2. In that same time, he had never seen security at or around the Moda Center enforce a ticket reselling rule within that designated area. *Id.* ¶ 4.

Plaintiff was the only ticket reseller present in the designated area on February 19. Wilson Decl. Ex. A at 16. While plaintiff was trying to sell tickets in this designated area, a Landmark employee named Charles Colbert shouted at plaintiff that he "can't sell tickets here" and that he needed to "[g]et across the street." *Id.* at 15-16. Plaintiff responded that he was in the correct reselling area. *Id.* at 16. Colbert then told plaintiff, "You don't deserve to be here. Get back to the cotton field." Kiel Decl. 9; *see id.* at 14-15.

According to Colbert, this interaction was "kind of hostile" and "kind of heated." Wilson Decl. Ex. B at 2. Colbert claims that plaintiff called him a "cracker" and a "meth head," and that Colbert cursed back at plaintiff after. *Id.* at 3-4. Colbert does not dispute that he told plaintiff to "[g]et back to the cotton field." Kiel Decl. 22-23.

Humiliated, plaintiff went looking for a Landmark supervisor and, failing to find one, returned to find Shawna Iggulden talking with Colbert. Wilson Decl. Ex. A at 15. Iggulden told Colbert that plaintiff was allowed to be in the disputed area because it was outside the area wherein Landmark enforced ticket reselling rules. Kiel Decl. 14. Iggulden also confirmed with Colbert that he had told plaintiff to go back to the "cotton field." *Id.* at 14-15. Colbert was relocated to another location after this incident, and his role was reassigned to another employee. *Id.* at 15-16. Iggulden later testified that she did not know whether Colbert was disciplined for this incident. *Id.* at 16-17. Iggulden also testified more generally that managers at Landmark "have their . . . favorites of employees" for whom they "[s]weep" certain things "under the rug." *Id.* at 17.

B.     Procedural Background

Plaintiff initiated this action on August 17, 2023, in the Multnomah County Circuit Court. Compl.

3

Vulcan removed the case to this Court on September 27, 2023. Notice of Removal, ECF 1. On November 3, 2023, Vulcan filed a motion to dismiss for failure to state a claim, ECF 8. On December 11, 2023, plaintiff filed a motion for leave to file an amended complaint naming Charles Colbert in place of defendant John Doe, ECF 18. The Court denied plaintiff's motion. Order of February 9, 2024, ECF 29.

Subsequently, the Court granted Vulcan's motion to dismiss. Op. & Order of July 30, 2024, ECF 33. On the discrimination claim, the Court found that Vulcan did not deny plaintiff full and equal access to the accommodations and services it provides because the Moda Center does not provide ticket reselling services. *Id.* at 3. Specifically, the Court held that Portland City Code § 14A.50.060 prohibits the reselling of certain tickets at the Moda Center and, accordingly, that plaintiff could not "establish that he was denied services and accommodations that the Moda Center does not offer." *Id.* at 3-4. On the negligence claim, the Court held that plaintiff had not adequately alleged that Vulcan had a sufficient agency relationship over Colbert. *Id.* at 4. The Court ultimately dismissed both claims against Vulcan with leave to amend. *Id.* at 5. Plaintiff did not file an amended complaint and, instead, stipulated to Vulcan's dismissal from this action on September 4, 2024. *See* Am. Stip. & Notice of Voluntary Dismissal, ECF 38; Notice Re: Stipulation, ECF 40.

On March 27, 2025, Landmark filed the now-pending motion for summary judgment. Landmark Mot. for Summ. J. ("Landmark Mot."), ECF 47. On April 18, 2025, plaintiff filed a response in opposition. Pl. Resp. to Landmark Mot. ("Pl. Resp."), ECF 49. On May 2, 2025, Landmark filed its reply. Landmark Reply Supp. Mot. ("Landmark Reply"), ECF 51.

## DISCUSSION

Landmark largely asks the Court to transpose its earlier ruling on Vulcan's motion to dismiss onto Landmark's present motion for summary judgment. *See* Landmark Mot. 4, 7-8; Landmark Reply 2-3. For the reasons described below, the two motions require different analyses and command different outcomes. Landmark's motion for summary judgment is denied as to both of plaintiff's claims.

A.  **Discrimination Under the Oregon Public Accommodations Act**

Landmark argues that it should be granted summary judgment on plaintiff's first claim, for

4

discrimination under the OPAA, for three reasons: first, because plaintiff was not denied access to the accommodations provided at the Moda Center, as described in the Court's prior ruling; second, because plaintiff was not physically excluded from the Moda Center; and third, because plaintiff has not shown discriminatory behavior. Landmark Mot. 6-8. None of these arguments prevail.

As the Court described in its previous order, the OPAA makes it unlawful to deprive a person of "the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race." Or. Rev. Stat. § 659A.403(1); *see* Op. & Order of July 30, 2024, at 3. "The OPAA proscribes not just a refusal to serve a person on account of that person's race, but also 'the greater evil of unequal treatment, which is the injury to an individual's sense of self-worth and personal integrity.'" *Harrington v. Airbnb, Inc.*, 348 F. Supp. 3d 1085, 1089 (D. Or. 2018) (quoting *King v. Greyhound Lines, Inc.*, 61 Or. App. 197, 203, 656 P.2d 349 (1982)). "A plaintiff alleging that a defendant violated that statute bears the burden of proof at trial and, on a motion for summary judgment by the defendant, the burden to produce evidence that gives rise to a genuine issue of fact on any issue raised in the motion." *Austin v. Walmart, Inc.*, 340 Or. App. 279, 284, 570 P.3d 642 (2025) (citation and quotation marks omitted). "To satisfy that burden, a plaintiff must produce some or any evidence that presents a genuine issue of material fact for a jury to resolve," including, for example, "[c]ircumstantial evidence of discrimination." *Id.*

"Oregon courts have not articulated what elements a plaintiff must plead to state a claim under the OPAA." *Pancic v. JPMorgan Chase Bank, N.A.*, No. 3:23-cv-00002-HZ, 2023 WL 4640958, at *3 (D. Or. July 20, 2023) (brackets omitted). However, "the text of the statute provides guidance. A cause of action is available to any individual against whom any distinction, discrimination or restriction on account of [race] has been made by any place of public accommodation or by any employee acting on behalf of the same." *Id.* (cleaned up).

Plaintiff has raised genuine issues of material fact as to these elements. It is undisputed that the Moda Center is a place of public accommodation. *See* Landmark Mot. 6. It is also undisputed that one of the services provided by Landmark "inside and outside the Moda Center" is security. *Id.* at 3; *see* Compl.

5

¶ 1. Landmark has not argued that this service should be excluded from OPAA's purview under any relevant code or law.

Landmark's first and primary argument relies heavily on the Court's prior ruling. The Court previously held, based on the allegations in the complaint, that plaintiff resold tickets outside the Moda Center in violation of Portland City Code § 14A.50.060. *See* Op. & Order of July 30, 2024, at 3. The Court therefore found that plaintiff had not stated an OPAA claim against Vulcan, the company that manages the Moda Center, because plaintiff only alleged that he was "denied services and accommodations that the Moda Center ***does not offer***." *Id.* at 4 (emphasis added).

Landmark now asks the Court to make the same findings here because it remains true that plaintiff resold tickets outside the Moda Center in violation of Portland City Code § 14A.50.060 and because, like the Moda Center, Landmark "does not offer *accommodations* and *services* for people to violate laws and codes." Landmark Mot. 6-7 (emphasis in original). At first blush, Landmark's argument seems reasonable. Plaintiff's claims against Vulcan and Landmark do, after all, rely on the same underlying facts and concern the same incident that occurred outside the Moda Center. However, Landmark's argument ignores one key distinction—Landmark does not manage, control, or own the Moda Center, and the services and accommodations that Landmark provides are distinctly different than those offered by the Moda Center. Vulcan, on the one hand, is alleged to be "a holding company that manages various sports-related properties, including the Moda Center." Compl. ¶ 2. Vulcan's motion to dismiss was granted assuming the truth of this allegation. *See* Op. & Order of July 30, 2024, at 2, 5. Landmark, on the other hand, is a "corporation engaged in security for the Moda Center." *See* Compl. ¶ 1; Landmark Mot. 3 ("Landmark was retained to provide security services both inside and outside the Moda Center."). This distinction leaves the Court with a different question than it answered on Vulcan's motion to dismiss. The question on the present motion is whether Landmark, as a security company, denied plaintiff "full and equal accommodations, advantages, facilities and privileges of any place of public accommodation" on account of his race. Or. Rev. Stat. § 659A.403(3). Plaintiff has put forth sufficient evidence to put that question before a jury.

*Abraham v. Corizon Health, Inc.* is instructive in parsing out the impact of this distinction. 369 Or.

6

735, 511 P.3d 1083 (2022). The plaintiff in *Abraham*, who was incarcerated in a county jail, was deaf and diabetic. *Id.* at 737-38. A deputy employed by the defendant, "a private entity that contracted with the Clackamas County Jail to provide healthcare services to incarcerated persons," misunderstood the plaintiff's use of American Sign Language and incorrectly labeled the plaintiff as a suicide risk. *Id.* This led the defendant to deny the plaintiff access to meals and insulin for three days. *Id.* at 738. The plaintiff sued the defendant in federal court thereafter under ORS § 659A.142(4), which prohibits disability discrimination by places of public accommodation, as defined by ORS § 659A.400. *Id.* Eventually and in relevant part, the Oregon Supreme Court accepted a certified question from the Ninth Circuit that asked: "Is a private contractor providing healthcare services at a county jail a 'place of public accommodation' within the meaning of Oregon Revised Statutes § 659A.400 and subject to liability under § 659A.142?" *Id.* at 739 (quotation marks and citation omitted). The Oregon Supreme Court separated this question into two subparts: first, whether the "plaintiff was a customer or patron" under ORS § 659A.142; and second, whether the "defendant qualifie[d] as a place of public accommodation" Under ORS § 659A.400. *Id.* (internal quotation marks omitted).

On the first question, the Oregon Supreme Court distinguished the defendant contracting agency from the county jail through which it contracted, stating: "We do not need to decide, in this case, whether plaintiff would qualify as a customer or patron of the Clackamas County Jail. Defendant is not the jail; rather, it is a separate entity that provides a set of services to people in the jail's custody." *Id.* at 740. The court ultimately found that the plaintiff was a customer of the defendant company. *Id.* at 742.

On the second question, the Oregon Supreme Court explained that "for defendant to be liable under ORS 659A.142(4), it must be a place of public accommodation, resort or amusement as defined in ORS 659A.400 or a person acting on behalf of such a place." *Id.* (cleaned up). A place of public accommodation, the Oregon Supreme Court explained, includes "'[a]ny place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise.'" *Id.* (quoting Or. Rev. Stat. § 659A.400(1)(a)). The court found it undisputed that the defendant's services fell "within the expansive ambit of" this phrase and questioned

7

only whether it "offer[ed] those services to the public." *Id.* at 743 (internal quotation marks omitted). After reviewing the statutory text and legislative history, the court held that the defendant offered its services to the public because "although a jail may be restrictive in whom it houses, it also is not selective in the way that a club or other distinctly private organization is," and the facts that the defendant did "not serve the public at large[] and offer[ed] its services in a restricted environment" did not "diminish the legislature's expressed interest in ensuring that the services that defendant does provide are provided on a nondiscriminatory basis." *Id.* at 753.

       The court also addressed whether the defendant was excluded from the statute under an exception carved out "for local correctional facilities." *Id.* at 757 (citing Or. Rev. Stat. § 659A.400(2)). The defendant argued that the jail should be excluded under this exception and that, by proxy, the jail's contractor should be excluded as well. *Id.* Rejecting this argument, the Oregon Supreme Court noted that "[u]nder current law, a place of public accommodation need not be a physical place at all—that term is defined to include any place *or service* offering to the public accommodations, advantages, facilities, or privileges" under ORS § 659A.400(1)(a). *Id.* at 755 (emphasis in original) (cleaned up). Therefore, while the jail itself may have been excluded under an exception to the statute, that did "not imply that services providers like defendant are exempted as well." *Id.* at 756. The court thus held that the "defendant—a private entity that contracts with a jail, but that is not a jail," was not exempt from the statute. *Id.* at 758.

       Like in *Abraham*, this case involves two separate and distinct but interacting entities. Here, the two entities in question are Vulcan, the Moda Center's managing company, and Landmark, a company providing security services at the Moda Center. Rules that impact the Moda Center, and thus Vulcan—including the Portland City Code concerning ticket reselling at the Moda Center—do not necessarily impact Landmark. Likewise, and as already noted, the services offered by Vulcan and Landmark differ as well. Landmark, separate and distinct from Vulcan, offers security inside and outside the Moda Center. Just like the defendant in *Abraham*, Landmark offers this distinct service to the public. And so, just like the plaintiff in *Abraham*, plaintiff here is "entitled to the full and equal accommodations, advantages, facilities and privileges" offered by Landmark "without any distinction, discrimination, or restriction on account of race."

Or. Rev. Stat. § 659A.403(1). As described further below, plaintiff has shown genuine disputes of material fact as to whether Landmark denied him that entitlement.

While Landmark primarily hangs its hat on the Court's prior ruling—which the Court has now found does not control the issue at hand—it also argues that summary judgment is appropriate because plaintiff was not excluded from the premises and because he has not shown discriminatory behavior. The Court disagrees.

Exclusion from the premises is not required to find a violation of OPAA. Oregon law entitles plaintiff to "full and equal" access to Landmark's security services, Or. Rev. Stat. § 659A.403(1); it says nothing of whether plaintiff is merely entitled to remain in a specific geographic location.[3] *King* is instructive here. 61 Or. App. at 202-03. In *King*, the Oregon Court of Appeals held that verbal abuse can constitute a violation of the OPAA, even if the plaintiff is ultimately provided the services he initially sought. *See id.* at 201, 203. The plaintiff in *King* suffered a barrage of racial insults from an employee of a place of public accommodation while trying to return a bus ticket he had previously purchased. *Id.* at 200-01. But he was not refused service or forced to leave the premises. *See id.* at 201. "Certainly," the court reasoned, "if plaintiff was relegated to a certain section of the bus or made to wait until white customers were served, it could not be seriously contended that he received full and equal accommodations." *Id.* (citing *Gayle v. Browder*, 532 U.S. 903 (1956)). The court also found that "verbal abuse can be a distinction, discrimination or restriction on the basis of race" in violation of the OPAA. *Id.* at 203 (quotation marks omitted). Recognizing that the OPAA "was enacted . . . to prevent operators and owners of businesses catering to the general public from subjecting [African Americans] to oppression and humiliation," the court held that the employee's use of racial insults violated the OPAA. *Id.* at 202-03

---

[3] Landmark cites *Timberline Baptist Church v. Washington County*, 211 Or. App. 437, 458-59, 154 P.3d 759 (2007) on this point, stating that *Timberline* cited "federal law for the proposition that no religious discrimination exists 'where the institution was not completely excluded from the city.'" Landmark Mot. 7. *Timberline* addressed the substantial burdening of a party's "free exercise of its religious beliefs." 211 Or. App. at 465. It did not address the scope of ORS § 659A.403(1). Additionally, plaintiff's chosen quote is not derived from *Timberline*'s holding, but instead from a parenthetical the *Timberline* court used to describe a Third Circuit case. *Id.* at 458-59 (citing *Lighthouse for Evangelism v. City of Long Branch*, 100 Fed. App'x 70 (3rd Cir. 2004).

(emphasis and quotation marks omitted). The court further recognized that "the chief harm resulting from the practice of discrimination by establishments serving the general public is not the monetary loss of a commercial transaction or the inconvenience of the limited access but, rather, the greater evil of unequal treatment., which is the injury to an individual's sense of self-worth and personal integrity." *Id.* It is therefore irrelevant whether plaintiff was removed from the premises—he suffered the greater evil of unequal treatment when Colbert yelled racist insults.

*King* also destroys Landmark's final argument. Like in *King*, defendant's employee hurled racial insults at plaintiff. This fact is uncontested and supported by undisputed evidence. Like in *King*, that is enough to support plaintiff's discrimination claim.

Even without *King*'s clear guidance, plaintiff's claim finds further support in Ninth Circuit case law:

> The Ninth Circuit has suggested that a plaintiff can allege intentional discrimination in one of two ways: "that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."

*Pancic*, 2023 WL 4640958, at *3 (quoting *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006)). Landmark argues that plaintiff has not demonstrated that he was "deprived of services while similarly situated persons" were not because there were no similarly situated sellers on the day of the incident. *Lindsey*, 447 F.3d at 1145; *see* Landmark Mot. 7. But this addresses only one part of a two-part test, and as to the second part, Landmark cannot reasonably argue that plaintiff has failed to present evidence that he "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." *Lindsey*, 447 F.3d at 1145. Landmark's employee told plaintiff, an African American man, to "go back to the cotton field." Kiel Decl. 9, 14-15. There is no question that is "markedly hostile" and "objectively discriminatory." *Lindsey*, 447 F.3d at 1145.

Plaintiff has therefore shown a genuine dispute of material fact as to whether he was denied, on account of his race, full and equal access to the accommodations and privileges provided by Landmark's services. Landmark's motion for summary judgment on the OPAA discrimination claim is denied.

B.   **Negligence**

Landmark additionally moves for summary judgment on plaintiff's claim for common law negligence. Landmark's motion is again appropriately denied.

Under Oregon law,

> unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from [a] defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.

*Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987). "Foreseeability ordinarily presents questions of fact; however, where no reasonable juror could find that the kind of harm that befell the plaintiff was the foreseeable result of the defendant's negligent act, the harm is unforeseeable as a matter of law." *Lasley v. Combined Transp., Inc.*, 234 Or. App. 11, 16, 227 P.3d 1200 (2010) (citing *Buchler v. Or. Corr. Div.*, 316 Or. 499, 509, 853 P.2d 798 (1993) (en banc)), *clarified on other grounds on recons.*, 351 Or. 1, 261 P.3d 1215 (2011).

Plaintiff alleges that Landmark negligently failed to adequately train and supervise its employees regarding racial profiling. Compl. ¶ 14. Neither party offers much evidence on this point, although Landmark raises three arguments as to its entitlement to summary judgment. First, Landmark argues that the negligence claim cannot survive without the discrimination claim. Landmark Mot. 8-9. Of course, because the discrimination claim survives, this argument is a nonstarter.

Second, Landmark argues that that there is no genuine dispute as to whether Landmark adequately trained and supervised its employees on ticket reselling rules. Landmark Mot. 10-11. But, as described above, the ticket reselling rules are not at issue here. Instead, the question is whether there is a genuine dispute as to whether Landmark adequately trained and supervised its employees on racial profiling and discrimination—a question neither party seriously attempts to answer. Landmark argues that plaintiff has no claim for emotional distress damages because Landmark has not infringed on a legally protected interest sufficient to sustain the damages. Landmark Mot. 11. Plaintiff failed to respond to any of these arguments. However, Landmark is not entitled to summary judgment merely because plaintiff failed to refute its

11

arguments. *See Evans v. Independent Order of Foresters*, 141 F.3d 931, 932 (9th Cir. 1998). A court may only "grant summary judgment under the Federal Rules" where "the moving party bears its burden of showing its entitlement to judgment." *Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994). Where the non-moving party "fail[s] to respond to a motion for summary judgment," a court must still "carefully evaluate[] the moving papers" to determine whether there are any genuine issues of material fact. *Id.* at 1495 n.4.

As described above, plaintiff has shown a genuine dispute of material fact as to the OPAA discrimination claim. Construing the evidence in plaintiff's favor, as the Court must at this stage, plaintiff has also shown a genuine dispute of material fact as to whether Landmark adequately trained and supervised its employees on racial profiling. The only evidence in the record regarding Landmark's training and supervision shows that Landmark (1) has "favorites" for whom they "[s]weep" certain things "under the rug"; and (2) did not remove Colbert from his job after he told plaintiff to "go back to the cotton field," but instead moved Colbert to a different location to continue working. Kiel Decl. 9, 16-17. Nothing in the record suggests that Landmark provided its employees with any training or supervision regarding respect for persons of other races. When viewed in plaintiff's favor, this, and Landmark's decision to allow Colbert to continue working, at least suggests a serious failure to supervise.

Third and finally, Landmark argues that summary judgment is appropriate because emotional distress damages are unavailable for plaintiff's negligence claim. Plaintiff does not dispute that he does not allege physical injury and seeks only emotional distress damages for this claim. The question, then, is whether these damages are unavailable as a matter of law.

In Oregon, "a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 254, 505 P.3d 1078 (2022) (citing *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-61, 652 P.2d 318 (1982)). An exception to this rule applies "when the defendant violated a legally protected interest independent of the plaintiff's interest in being free from negligent conduct." *Id.* (citation and quotation marks omitted). This analysis proceeds in

three steps:

> First, we must determine whether the complaint alleges the violation of a legally protected interest. Second, we must determine whether such interest is of sufficient importance as a matter of public policy to merit protection from emotional impact. And third, we must determine whether the complaint alleges that the emotional distress was the foreseeable result of the violation of the legally protected interest.

*Id.* at 255. "[T]he term 'legally protected interest' refers to an independent basis of liability separate from the general duty to avoid foreseeable risk of harm." *Phillips v. Lincoln Cnty. Sch. Dist.*, 161 Or. App. 429, 432-33, 984 P.2d 947 (1999) (citation omitted). Foreseeability "should generally be determined by a factfinder, except in an 'extreme case.'" *Pickens v. United States*, 750 F. Supp. 2d 1243, 1257 (D. Or. 2010) (quoting *Donaca v. Curry County*, 303 Or. 30, 38, 734 P.2d 1339 (1987)).

Here, plaintiff has sufficiently stated a violation of a legally protected privacy interest under ORS § 659A.400: the interest in remaining free from racial discrimination. Oregon courts have recognized that purely emotional damages may be appropriate in instances of racial discrimination. *See, e.g.*, *Williams v. Joyce*, 4 Or. App. 482, 504, 479 P.2d 513 (1971) (citation omitted) ("Racial discrimination of the type here practiced by the petitioners is made an unlawful practice in Oregon by ORS ch. 659. Oregon courts recognize that mental suffering may be the direct, proximate and natural result of an infringement of a legal right."); *Meyer v. 4-D Insulation Co.*, 60 Or. App. 70, 73-74, 652 P.2d 852 (1982) ("[R]ecovery of damages for mental distress absent physical injury is allowed where there is an independent basis of liability in certain cases," including "racial discrimination." (emphasis omitted)). At least one court within this District has found that a violation of ORS § 659A.403 specifically is sufficient to state a legally protected interest for purposes of emotional distress damages. *See Page v. Walgreen Co.*, 743 F. Supp. 3d 1228, 1236 (D. Or. 2024).

On the second step, there can be no question that protection from racial discrimination is of sufficient interest as a matter of public policy. *See id.* Lastly, this is not an "extreme case" where the Court "can decide that no reasonable factfinder could find the risk foreseeable." *Pickens*, 750 F. Supp. 2d at 1252 (citation and quotation marks omitted). This question must be left to the jury to decide.

Viewing the evidence in the light most favorable to plaintiff, as the Court must at this stage, genuine

13

disputes remain as to whether Landmark was negligent in its training and supervision of Colbert. Summary judgment is therefore denied.

## CONCLUSION

Landmark's motion for summary judgment, ECF 47, is DENIED. The parties shall file a joint status report with proposed trial dates by April 6, 2026.

IT IS SO ORDERED.

DATED this 5th day of March, 2026.

                                                            Adrienne Nelson
                                                            United States District Judge